UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL J. FLAHERTY, JR., EUGENE P. ADAMS,
JOSEPH A. AGRO, MARK D. ARCARA,
RANDY G. ATTEA, JAMES F. BARGNESI,
CHRISTOPHER J. BELLING, DIANA M. BOCCIO,
TIMOTHY P. BRIDGE, CATHERINE A. CAREY,
KENNETH F. CASE, MELISSA M. CHIASERA,
PETER J. COSGROVE, PETER J. CROTTY,
DON DALLY, JOHN DeFRANKS,
JORGE S. DeROSAS, JOHN C. DOSCHER,
G. MICHAEL DRMACICH, DANIEL DuBOIS,
SUSAN ETU EAGAN, ROBERT C. FIGLIOLA,
THOMAS M. FININERTY, JOHN J. FLYNN,
THOMAS E. FOWLER, JR., LAURIE A. FRANK,
ANTHONY L. FUMERELLE, COLLEEN CURTIN GABLE,
LAUREN GAUTHIER, MARIO A. GIACOBBE,
PAUL J. GLASCOTT, AMY J. GOLDSTEIN,
KAREN GREENSPAN, GARY W. HACKBUSH,
JEFFREY J. HAGEN, MARCY H. HAGEN,
LOUIS A. HAREMSKI, RAYMOND C. HERMAN, JR.,
FRANK T. HOUSH, THOMAS P. HURLEY,
WENDY R. IRENE, ROSANNE E. JOHNSON,
CYDNEY A. KELLY, DAVID S. KELLY,
JOSEPH L. KILBRIDGE, DANIEL M. KILLELEA,
BRIAN M. KLEBBA, THOMAS D. KUBINIEC,
J. PATRICK LENNON, SHARON M. LoVALLO,
JASON C. LUNA, J. MICHAEL MARION,
LATONIA D. GASTON MARSH, JOSEPH J. MARUSAK,
MICHAEL I. McCABE, MICHAEL J. McHALE,
BRIAN P. McNAMARA, STEVEN MEYER,
DONNA A. MILLING, MARION MISKOVSKI,
JOSEPH M. MORDINO, MOLLY J. MUSARRA,
JOSEPH A. MUSCATO, DIANE T. O'GORMAN,
DIANE L. OAK, JUDITH G. OLIN,
KELLEY A. OMEL, BRIAN K. PARKER,
GLENN PINCUS, PAUL S. PIOTROWSKI,
FREDERICK J. PLATEK, JR., BRANDON A. PORTIS,
LYNETTE M. REDA, EMILIA RODRIGUEZ,
LISA M. RODWIN, WALTER L. ROOTH III,

02-CV-0243E(Sr)

MEMORANDUM

and

ORDER[1]

---

[1]This decision may be cited in whole or in anypart.

MARK A. SACHA, ROBERT A. SCHARLOCK,
PAUL E. SCHARMACH, JOHN G. SCHOEMICK,
DENISE M. SCHUNKE, LAWRENCE M. SCHWEGLER,
FRANK J. SEDITA, DANIEL R. SLADE,
TINA M. STANFORD, DOUGLAS P. STILLER,
LETIZIA P. TAGLIAFIERRO, BETTY CALVO TORRES,
THOMAS D. TRBOVICH, HOLLY P. TUCKER,
YVONNE VERTLIEB, LOUIS P. VIOLANTI,
CANDACE K. VOGEL, PAULINE C. WILL,
PAUL J. WILLIAMS III, LISA M. YAEGER and
BARRY A. ZAVAH,

Plaintiffs,

-vs-

JOEL A. GIAMBRA, Erie County Executive,
COUNTY LEGISLATURE OF ERIE COUNTY,
LEONARD R. LENIHAN, Erie County Personnel Commissioner, and
COUNTY OF ERIE,

Defendants.

---

## INTRODUCTION

The Plaintiffs are current and former employees of the Erie County District Attorney's Office.[2] They commenced this action against the Defendants[3] alleging

---

[2] As listed in the caption, Plaintiffs are 97 in number. According to the Plaintiffs' submissions, plaintiffs Joseph L. Kilbridge, Frederick J. Platek, Jr., Brandon A. Portis and Lisa M. Yaeger wish to discontinue their participation in this action and stipulations to that effect were prepared and forwarded to the Defendants but no such stipulations have been submitted to the Court for its approval. Willett Aff. at ¶8 (Dkt. # 47).

[3] Sued herein are Joel Giambra, the Erie County Executive, the Erie County Legislature, Leonard R. Lenihan, the Erie County Personnel Commissioner and Erie County, collectively, ("Defendants"). As both Giambra and Lenihan are sued in their official capacities only, the claims against them are really asserted against the County. In their Motion for Summary Judgment with respect to the County's affirmative defenses, the Plaintiffs confirm that Giambra and Lenihan have been sued in their official capacities only and the Plaintiffs seek no relief as against them, personally.

that their Equal Protection rights were violated when they were denied cost of living increases and salary increments for 2002 and were also required to contribute 10% of the cost of their health insurance premiums.[4] Pending before the Court are the Plaintiffs' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCvP") seeking a ruling that their Equal Protection rights were violated and/or dismissing the Defendants' asserted defenses, as well as the Defendants' Motion for Summary Judgment. Both Motions have been fully briefed and oral argument was heard by the Court on September 23, 2005.

**BACKGROUND**

The following facts are taken from the submissions of the parties and are, except where noted, undisputed.

The Plaintiffs were all employed in various capacities by the District Attorney's Office during the period from November 2001 to March 2002, or during some portion thereof. Erie County ("the County") has a policy that employees occupying positions with similar levels of responsibility should be compensated equally. Plaintiffs' Rule 56.1 Statement, Ex. J. Accordingly, the County utilizes a graded compensation system whereby each employment position within the County is assigned a job grade of 1 to 22. Plaintiffs' Rule 56.1 Statement, Ex. L. Positions with equal or similar levels of responsibility are generally assigned to the same job grade. The vast majority of the Plaintiffs were Assistant District Attorneys who occupied positions with job

[4] These actions will be referred to generally as the "salary freeze."

grades of 11 to 15. Five of the Plaintiffs were employed by the District Attorney's office in non-attorney positions.

In addition to the job grade assigned by the County, each position is assigned a civil service classification under New York State law. All of the Plaintiffs were classified as "managerial/confidential" employees. New York State Civil Service Law §214 precludes managerial/confidential employees from becoming members of any employee organization. All of the Plaintiffs were so precluded and therefore none was covered by a collective bargaining agreement with the County. Pursuant to New York County Law §205, the Plaintiffs' compensation was fixed by the Erie County Legislature ("the Legislature"). The Legislature was and is empowered to raise and lower such compensation subject to statutory and constitutional considerations. N.Y. County Law §205.

In 1999, the County reached a collective bargaining agreement with the unions representing eligible white-collar workers for the years 2000, 2001, 2002 and 2003. On July 15, 1999, the Legislature passed Comm. 14E-14, a resolution which extended the benefits of those collective bargaining agreements to employees who — like the Plaintiffs — were not members of the collective bargaining unit due to their managerial/confidential employee classification.[5] Thereafter, all County employees, regardless of their civil service classification or membership in the collective

---

[5] Comm. 14E-14 also extended the benefits of the collective bargaining agreements to flat-salaried, part-time, seasonal and hourly County employees.

bargaining unit, enjoyed the scheduled step increases and other salary benefits contained within the collective bargaining agreements.

In 2001, members of the County administration began to fear a budget deficit for 2002. Joseph Passafiume, the then-budget director for the County, projected a $19 million budget gap due in part to increased costs for Medicaid for which the County would not be reimbursed by the State of New York and in part due to an estimated $7 million decrease in County sales tax revenue. FRCvP 56.1 Statement, Ex. P. Passafiume stated that, based on those projections, as well as the heightened uncertainty surrounding available aid from New York State in the aftermath of the events of September 11, 2001, he recommended that a salary freeze be implemented and that the County eliminate a number of jobs. FRCvP 56.1 Statement, Ex. O. The suggestion of implementing a salary freeze originated with Passafiume. *Ibid*.

In November 2001, Erie County Executive Joel Giambra ("Giambra") submitted his proposed 2002 budget to the Legislature for its consideration. While the proposed budget provided for cost of living increases and salary increments for County employees who were covered by collective bargaining agreements, the proposed budget did not include any such increases for County employees who were classified as managerial/confidential. The proposed budget also eliminated 255 County jobs. In his budget message accompanying the proposed budget, Giambra stated his goal:

> "[M]y goal is to cut, coordinate and grow — cut the local property tax burden and coordinate government service-delivery functions so that the regional economy can grow.
>
> "Now, during a national economic downturn, and in the face of widespread fiscal distress, it is more important than ever that we in Erie County government stay focused on reducing the size and cost of local government."

Giambra's 2002 Budget Message and Summary at 1-2, Plaintiff's Rule 56.1 Statement, Ex. N.[6]

On December 21, 2001 the Legislature passed various budget resolutions, including the resolutions implementing the salary freeze and the health care cost contribution for managerial/confidential employees.[7] The Legislature thereafter adopted the budget containing those resolutions. In 2002, all County employees classified as managerial/confidential were denied salary increases and were required to contribute 10% of the cost of their health insurance premiums consistent with the salary freeze, while County employees in all job grades who were not so classified received their salary increases for 2002 and were not required to contribute to the cost of their health insurance.[8] The County saved approximately $1 million by

---

[6] Giambra's summary of the proposed 2002 budget indicated a projected $12 million budget gap or "challenge." Plaintiffs' Rule 56.1 Statement, Ex. N.

[7] The Legislature essentially nullified the Application of Comm. 14E-14 for 2002.

[8] Employees of the Buffalo and Erie County Public Library — even those classified as managerial/confidential — all received their scheduled salary increases. Defendants have provided evidence demonstrating that the Buffalo and Erie County Public Library is not an administrative division of the County. *See Buffalo and Erie County Public Library* v. *County of Erie*, 577 N.Y.S.2d 993 (4th Dep't 1991), *aff'd*, 80 N.Y.2d 938, 591 N.Y.S.2d 131 (1992). Accordingly, the County exerts no control over the compensation of Library employees. (continued...)

instituting the salary freeze and over $6.1 million by eliminating the 255 jobs. Plaintiffs' Rule 56.1 Statement, Ex. O.

Plaintiff Michael Flaherty initially filed this action in New York State Supreme Court, Erie County, as an Article 78 proceeding on March 8, 2002. After the Defendants removed the action to this Court, Flaherty amended the complaint on August 26, 2003 and the other Plaintiffs joined the action at that time. The Plaintiffs assert that by treating employees classified as managerial/confidential disparately from other employees in positions with identical job grades but not so classified, the Defendants violated their equal protections rights guaranteed to them by the Fourteenth Amendment to the United States Constitution and by Article I, Section 11 of the New York State Constitution.

The Plaintiffs contend that the Defendants targeted managerial/confidential employees for the salary freeze because of their non-union status, in other words, because the Defendants were not bound by a collective bargaining agreement with respect to such employees. The Plaintiffs argue that the circumstances of this case are nearly identical to those in *Matter of Scime* v. *County Legislature of Erie County*, 395 N.Y.S.2d 952 (1977), in which an equal protection violation was found. The Defendants, on the other hand, argue that this case is similar to *New York City*

---

[8](...continued)
Plaintiffs' Rule 56.1 Statement, Ex. O. The Library determined that its employees would receive salary increases for 2002. The Plaintiffs do not contest such facts.

*Managerial Employees Ass'n* v. *Dinkins*, 807 F. Supp. 958 (S.D.N.Y. 1992), in which no equal protection violation was found.

**DISCUSSION**

FRCvP 56(c) states that summary judgment may be granted only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Goenaga* v. *March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (internal citation omitted). If the moving party makes such a showing, the non-moving party must then come forward with evidence of specific facts sufficient to support a jury verdict in order to survive the summary judgment motion. *Ibid*. In other words, after discovery and upon a motion, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).

Not every factual dispute will preclude summary judgment, however. Summary judgment is appropriate where there is "no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if the evidence in the record "is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid*. Stated another way, there is "no genuine issue as to any material fact" where there is a "complete failure of proof concerning

an essential element of the nonmoving party's case." *Celotex*, at 323. Additionally, the disputed fact must be material, which is to say that it "might affect the outcome of the suit under the governing law." *Anderson*, at 248.

Finally, "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *St. Pierre* v. *Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (*citing Anderson*, at 255). Nonetheless, mere conclusions, conjecture, unsubstantiated allegations or surmise on the part of the non-moving party are insufficient to defeat a well-grounded motion for summary judgment. *See Goenaga*, at 18.

A. Equal Protection Claim

Although the County's actions are challenged under both the federal and state Constitutions, the analysis of equal protection claims is identical and both claims will be considered together. *See Hayut* v. *State Univ. of New York*, 352 F.3d 733, 754-55 (2d Cir. 2003) (*citing Brown* v. *State*, 89 N.Y.2d 172, 190, 652 N.Y.S.2d 223 (1996)).

The parties agree that the challenged classification in this case is economic in nature and is subject to the "rational basis" level of scrutiny. Plaintiffs' Mem. at 13; Defendants' Mem. at 3. The parties also agree as to the components of such scrutiny. Under rational basis review, a challenged classification will be upheld if it "rationally furthers a legitimate state interest." *Weinstein* v. *Albright*, 261 F.3d 127, 140 (2d Cir.

2001) (*quoting Nordlinger* v. *Hahn*, 505 U.S. 1, 10 (1992)). As the Supreme Court has stated:

> "To be sure, the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification."

*Norlinger* v. *Hahn*, 505 U.S. 1, 15 (1992). Rather, it is the burden of those attacking the rationality of the legislation "to negative every conceivable basis which might support it." *Lehnhausen* v. *Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (internal citation and quotation marks omitted). "[A]n equal protection challenge must be denied 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Weinstein*, at 140 (*quoting General Media Commc'ns Inc.* v. *Cohen*, 131 F.3d 273, 285 (2d Cir. 1997)). However, when the government states its purpose for taking action, the Court must accept such purpose as true unless the plaintiffs make a factual showing that the stated purpose could not have been the real objective. *See Minnestoa* v. *Clover Leaf Creamery, Co.*, 449 U.S. 456, 463 n.7 (1981). The government's stated objectives must be considered to be the true objectives even if not stated at the time the action was taken. *Dinkins,* at 967 (internal citations omitted).

Furthermore, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *FCC* v. *Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (internal citation omitted). As the Supreme Court has noted "the absence of legislative facts explaining the

distinction on the record * * * has no significance in rational-basis analysis. *Ibid.* (internal citations omitted). A legislature is not required to articulate its reasons for enacting a statute.

Once the Court has determined that a legitimate governmental purpose has been demonstrated, the Court must determine whether the means chosen by the government were rationally related to furthering that purpose. *See Western & S. Life Ins. Co.* v. *State Bd. of Equalization*, 451 U.S. 648, 668, 671-72 (1981). ("As long as the classificatory scheme chosen * * * rationally advances a reasonable and identifiable governmental objective, [the court] must disregard the existence of other methods of allocation. * * *.") In making such a determination, the Court is not permitted to weigh alternatives available to the government. *See Schweiker* v. *Wilson*, 450 U.S. 221, 235 (1981). An equal protection challenge will not succeed even if there were better, or more efficient means available. The Court is not to second guess the government's choice. "Legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, at 315.

1. Governmental Interest or Purpose

The Defendants assert that the purpose of instituting the salary freeze was to reduce the size and cost of County government. The Defendants further assert, and the Plaintiffs do not explicitly contest, that the generation of budget savings is a legitimate state interest. The Plaintiffs argue instead that the Defendants' stated

purpose was not the true purpose as is demonstrated by the inconsistencies in the claimed purposes. The Plaintiffs argue that the Defendants first proffered a rationale of a projected budget gap of $19 million and only in response to this Motion have claimed a general purpose of reducing the size and cost of County government.[9] The Plaintiffs ignore, however, the fundamental principle that the County is not required to articulate *any* rationale for its actions and the Court must consider whether the challenged action furthers any *conceivable* legitimate purpose regardless of whether such purpose actually motivated the Defendants. *See United States R.R. Ret. Bd.* v. *Fritz*, 449 U.S. 166, 179 (1980).

Where as here the government has articulated a purpose — *i.e.*, to reduce the size and cost of such government — the Court will assume such to be the true purpose. *See Clover Creamery*, at 463 n.7. Reducing the size and cost of County government — and therefore the concomitant burden on taxpayers — is a legitimate governmental purpose.

2. Means Rationally Related to the Interest or Purpose

Plaintiffs next contend — in a variety of rather fluid arguments — that the Defendants' chosen means was not rationally related to the stated purpose or to any legitimate purpose.

---

[9] The Plaintiffs do not speculate as to what — if not to generate savings — the Defendants' true purpose was in enacting the salary freeze. *Contrast Benjamin* v. *Town of Fenton*, 892 F. Supp. 64, 67 (N.D.N.Y. 1995) (wherein plaintiff alleged that true purpose of reducing his salary was not to save money for the town but to exact political retribution).

First, the Plaintiffs argue that the Defendants' choice to institute a salary freeze was arbitrary and that such is demonstrated by the complete absence of any determination or debate in the Legislature as to the existence of a budget crisis necessitating the action. In support, the Plaintiffs cite to the deposition testimony of a single County Legislator who stated that she recalled no discussion of a budget crisis and that she did not recall any unusual circumstances pertaining to the 2002 budget. Plaintiffs' Rule 56.1 Statement, Ex. Z. The absence of legislative debate or finding on the record is immaterial. As noted *supra*, "the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis." *Beach Commc'ns*, at 315. A legislature is not required to articulate its reasons for enacting a statute. *Ibid*.

Next, the Plaintiffs argue that the Legislature "could not have reasonably believed that [Giambra's] rationale for the disparate treatment of managerial/confidential employees was true." Plaintiffs' Mem. at 13. The Plaintiffs contend that:

> "the circumstances [allegedly justifying the need for the salary freeze] no longer existed *** at the time that the Legislature considered the budget proposal. As a result, the Legislature could not have rationally concluded that the salary freeze was anything other than a completely arbitrary measure."

Plaintiffs' Mem. at 6. In support, the Plaintiffs argue that both the proposed 2002 budget and the 2002 budget as adopted showed that all Social Services expenditures were covered by anticipated New York State aid; thus there existed no budget gap.

Plaintiffs also note that before adopting the budget, the Legislature reduced the Social Services budget by $1.5 million — *i.e.*, more than the $1 million that it sought to save by instituting the salary freeze. The Plaintiffs next point to the Legislature's use of $20 million in fund balances — an amount greater than the predicted budget gap — to balance the budget. The crux of the Plaintiffs' argument in this regard is that the salary freeze was not *necessary* even in light of Giambra's justification.[10]

Again, the Plaintiffs ignore the fact that an equal protection challenge will be denied if the measure was rationally related to *any* legitimate governmental purpose. Here, reducing the size and cost of County government is a legitimate purpose. Information presented to the Legislature at the time it considered Giambra's proposed budget included predictions that — as had occurred in prior years — the County's Medicaid expenditures would likely increase, that the state's and even the nation's economic forecast was uncertain as each dealt with the repercussions of the events of September 11, 2001, that, at least with respect to August 2001, the County did not reach its anticipated sales tax revenues and, in order to balance the 2002 budget — even after some budget cuts — the Legislature would be forced to utilize $20 million in fund balances. Based on those forecasts, the Legislature could have

---

[10] To the extent the Plaintiffs argue — explicitly or implicitly — that the salary freeze was unnecessary or that more effective or efficient or even-handed alternatives to the salary freeze existed but were not considered, the Court is specifically forbidden from considering such arguments. *See Schweiker*, at 235 ("As long as the classificatory scheme chosen * * * rationally advances a reasonable and identifiable governmental objective, [the court]must disregard the existence of other methods of allocation * * *. "). It is not for the Court to determine whether the Defendants chose the means most likely to achieve the stated purpose, only whether the means chosen was rationally related to the goal.

rationally concluded that it needed to reduce expenditures in order to reduce the size and cost of County government.

Finally, the Plaintiffs argue that, even if the salary freeze was rationally related to the legitimate purpose of budgetary savings, the Defendants' decision to burden only managerial/confidential employees was not rationally related to that purpose. The Plaintiffs argue that such employees numbered only approximately 644 out of a total of approximately 6,700 County employees and the salaries of such managerial/confidential employees were not the cause of the budget deficit.[11] The Plaintiffs also argue that the selection of these employees for this treatment resulted in the violation of the County's policy that employees performing similar work be compensated at equal rates and also created "a previously non-existent system of compensation whereby managerial/confidential employees were placed in a classification inferior to that occupied by other County employees of the very same pay grades." Reply Mem. at 5.[12]

As noted *supra* the Plaintiffs rely extensively on *Matter of Scime* v. *County Legislature of the County of Erie*, 395 N.Y.S.2d 952 (1977). While *Scime* is strikingly similar to the instant case in terms of factual background, there are critical factual

---

[11] In a related point, the Plaintiffs note that the salary freeze generated only slightly over $1 million in savings and argue that such limited savings renders the imposition of the salary freeze irrational. The Plaintiffs ignore the fact that, along with the salary freeze, the County eliminated 255 jobs, generating an additional $6 million in savings.

[12] Plaintiffs conclude this argument by suggesting that, in order to survive the equal protection challenge, the County bears the burden of demonstrating that the new classification was rationally related to a legitimate governmental purpose. In fact, however, the burden lies with the Plaintiffs to demonstrate the converse. *See Lehnhausen*, at 364.

differences which distinguish *Scime* from this case. In *Scime* — as in this case — the Legislature, by resolution, had extended the benefits of the collective bargaining agreements to non-unionized employees, including managerial/confidential employees. In *Scime* the Legislature determined for the years 1976 and 1977 to institute a salary freeze whereby the managerial/confidential employees would not receive salary increments under the collective bargaining agreements. However, in *Scime*, the Legislature's institution of the salary freeze notwithstanding, the vast majority of managerial/confidential employees still received the scheduled salary increases. *Scime*, at 954. The plaintiffs were the only exceptions. Thus, the handful of plaintiffs were treated disparately from the remainder of managerial/confidential employees and from the unionized employees. The *Scime* court found no rational basis for the disparate treatment and therefore concluded that such treatment violated the plaintiffs' equal protection rights. In the instant case — in stark contrast — *all* managerial/confidential employees whose compensation was set by the Legislature were subject to the salary freeze. The salary freeze was applied even-handedly among the entire classification.

The Defendants in turn rely substantially on *New York City Managerial Employees Ass'n* v. *Dinkins*, 807 F. Supp. 958, 966 (S.D.N.Y. 1992). In *Dinkins*, the Mayor of New York City and various administrative units of the City imposed a salary freeze on managerial employees during a time of fiscal crisis. As one purpose for the action, the Mayor indicated that he wanted the City's highest ranking employees to

demonstrate their willingness to make financial sacrifices. The Mayor also stated that the other purpose was to generate savings. The *Dinkins* court concluded that both purposes were legitimate and that the City's selection of managerial employees for the salary freeze was rationally related to both purposes because managerial employees were among the City's most highly-compensated employees. The *Dinkins* court also noted that the salary freeze initially also applied to "confidential" employees, who were not necessarily among the City's highly compensated and that:

> "This initial classification, derived from the benefits of collective bargaining and employees in managerial, policy-making and confidential jobs, was a rational classification even though it included the [non-managerial and lower paid] employees."

*Dinkins*, at 971-72.

As in *Dinkins*, the Defendants in this action argue that the selection of managerial/confidential employees was rational because the higher County job grades contain a much higher proportion of positions within that classification. As such, generally, the employees within such classification are among the most highly compensated County employees.[13] Accordingly, the Defendants could have

---

[13] The Plaintiffs argue, and it cannot be disputed, that not all employees so classified are among the most highly compensated and that there are other highly compensated individuals who are not so classified. However, these facts do not demonstrate that the Defendants' selection of employees within the classification for the salary freeze was arbitrary or irrational. A government's choice will not be stricken because it is imperfect so long as it has some "reasonable basis." *See Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970). According to the information provided to the Court as to the number of job titles classified as managerial/confidential, while only 35% of the positions in job grades 11 through 20 were so classified, that percentage rises to nearly 85% for positions in job grades 16 through 20. *See* Plaintiffs' Rule 56.1 Statement, Ex. K.

rationally concluded that by freezing the salaries of employees within this classification, they could achieve the most savings.

**CONCLUSION**

For the reasons stated, the Court concludes that the salary freeze as implemented was rationally related to a legitimate governmental purpose of budgetary savings and thus did not violate the Plaintiffs' equal protection rights. It is accordingly **ORDERED** that the Defendants' Motion for Summary Judgment is granted in part[14] and the Plaintiffs' Motion for Summary Judgment is denied in its entirety.

The Clerk of the Court is directed to take all steps necessary to close the case.

DATED: Buffalo, N.Y.

August 30, 2006

/s/ John T. Elfvin

JOHN T. ELFVIN
S.U.S.D.J.

---

[14] In light of the Court's conclusion with respect to the equal protection claim, the Court declines to consider the remainder of the Defendants' Motion seeking summary judgment with respect to the affirmative defenses.